## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Abby Mathieu, a Special Agent (SA) with Homeland Security Investigations (HSI), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain account that are stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with Homeland Security Investigations and have been so employed since 2019.  I am currently assigned to the Internet Crimes Against Children (ICAC) task force where I investigate primarily crimes involving the sexual exploitation of children.  Since 2016, I have worked in law enforcement during which I have attended several law enforcement-training courses both relative to criminal investigation in general and cyber-crime investigations in particular.  I have led numerous investigations involving child exploitation on the internet and/or use of digital media or computer systems in committing crimes.

3. I receive training on a daily basis working child exploitation investigations for the Maine ICAC taskforce. My work with the ICAC has allowed me to work with certified forensic agents and to learn from them some of the basics of how the forensic analyst examines digital evidence. In addition, I have interviewed numerous individuals who have possessed and/or disseminated sexually explicit material and have discussed with them the methods used to learn about, to obtain, to disseminate child pornography, and to avoid detection by the authorities. I have authored and assisted in the execution of more than 30 search-and-seizure warrants during my tenure as a law enforcement officer.

4. I make this affidavit in support of an application for a search warrant for the Apple iCloud account of paradoxical_scorpio@icloud.com and mikie.peterson207@gmail.com that were found on a summons return from TracFone.

5. The purpose of this application is to seize evidence, more particularly described in Attachment B, of violations of 18 U.S.C. § 2252A(a), which prohibit a person from knowingly transporting ((a)(1)), receiving or distributing ((a)(2)), soliciting or advertising ((a)(3)(B)), possessing or accessing with intent to view ((a)(5)(B)), in interstate or foreign commerce, or by using any facility or means of interstate or foreign commerce, child pornography, as defined in 18 U.S.C. Section 2256(8). 18 U.S.C. §and 2252A(b) also makes it a crime to attempt to commit such acts regarding child pornography. In addition, 18 U.S.C. Section 2422(b) makes it a crime to use or attempt to use a facility of interstate commerce to entice or persuade a child to engage in any sexual activity for which any person can be charged with a criminal offense, and § 2 prohibits any person from aiding or abetting such a crime. Further, 18 U.S.C. 2251(a) and (e) prohibit any person from attempting or conspiring to sexually exploit children by enticing or

2

coercing a child to engage in or assist another person to engage in sexually explicit material for the purpose of creating a visual depiction of such conduct.

6.      The facts set forth in this affidavit are based on my personal knowledge, information obtained during my participation in this investigation, information from others, including law enforcement officers, my review of documents and computer records related to this investigation, and information gained through my training and experience.  Based on this training and experience, there is probable cause to believe that contraband and evidence, fruits, and 18 U.S.C. §§ 2252A(2) and 2252A.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

7.      The court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8.      I, Abby Mathieu, am a special agent with Homeland Security Investigations. I am currently investigating the transportation, receipt, distribution, solicitation, advertisement and possession of child pornography, in violation of 18 U.S.C. §2252A(a) and (b), enticement or attempted of a minor to engage in sexual conduct for which any person may be charged with a crime in violation of 18 U.S.C. § 2422(b), and sexual exploitation of minors and conspiracy to sexually exploit minors in violation of 18 U.S.C. 2251(a) and (e).

SNAPCHAT AND INSTAGRAM CYBERTIP INVESTIGATIONS

9.      The Maine State Police Computer Crimes Unit received three separate CyberTips between 07/13/2021 and 09/23/2021 from the National Center for Missing and Exploited Children (NCMEC). CyberTipline Report Numbers 91796927 and 96574514 were reported by Electronic Service Provider (ESP) Snapchat, while CyberTipline Report Number 99290888 was reported by ESP Instagram. Both Snapchat and Instagram CyberTips were reported to NCMEC in accordance with federal law, 18 U.S.C.A. § 2258A.

10.     Snapchat is a multimedia messaging app developed by Snap Inc., originally Snapchat Inc. One of the principal features of Snapchat is that pictures and messages are usually only available for a short time before they become inaccessible to their recipients.

11.     Instagram is a free photo and video sharing app available on iPhone and Android. People can upload photos or videos and share them with their followers or with a select group of friends. They can also view, comment and like posts shared by their friends on Instagram. Anyone 13 and older can create an account by registering an email address and selecting a username. Instagram is owned and operated by Facebook. Facebook and Instagram accounts can be linked together into one account, which shares a username. (reference www.instagram.com as accessed on 03/25/2022)

12.     NCMEC is a nonprofit organization that provides services to families and professionals that relate to the abduction and sexual exploitation of children. NCMEC also operates the CyberTipline and the Child Victim Identification Programs to assist law enforcement officers and others in identifying and rescuing victims of child exploitation and child pornography. As part of the NCMEC directives, the NCMEC works with electronic service providers (ESP) and remote computing service providers, such as Facebook, to reduce

4

the dissemination of child pornography images and or videos on the internet. When an ESP becomes aware of suspected child pornography images and/or videos, the ESP representative may view the images and/or videos in question to determine if the images and/or videos is child pornography and thus a violation of the ESP use agreement with the user(s). If the image and or video is deemed by the ESP representative to be child pornography, the ESP will file an electronic report with the NCMEC. The reporting ESP will provide in the NCMEC report samples of the child pornography images and/or videos, IP addresses[1] captured at the date and time of the child pornography file being uploaded by the user, and any registration information (if available). NCMEC will then research more publicly available information based on the information provided to them by the ESP to determine, if possible, the identification and or geographic location of the user uploading the child pornography images and or videos in order to forward the report to the appropriate jurisdiction. NCMEC will then forward their report to the Regional Internet Crimes Against Children (ICAC) commander for further investigation. The Maine Computer Crimes Unit is the regional ICAC for Maine.

    13.    On 05/12/2021, NCMEC received CyberTip report #90092957 from Snapchat, as required by 18 U.S.C.A. § 2258A. In this case Snapchat captured a user uploading one video file of sexually explicit material. Snapchat reviewed the uploaded file. Snapchat reported the username on the suspect account was "jonhall93". Snapchat reported an email address of

---

[1] *Internet Protocol Number* (IP) An IP is a unique numerical label assigned to each device (e.g., computer, printer) participating in a computer network that uses the Internet Protocol for communication. IP addresses are usually written and displayed in human-readable notations, such as 172.16.254.1 (IPv4), and 2001:db8:0:1234:0:567:8:1 (IPv6). Every machine that is on the Internet has an IP number. Every location has a unique IP number.

5

fordfan111793@gmail.com and a phone number of (207)-447-5240 as being listed as the

verification contact information for the user of the account.

14.     In CyberTip 90092957 the user uploaded a video file titled as "*jonhall93-None-3a036137-6ac1-506f-991f-2ee8c4f972b0~36-5b3f2c25af.mp4*" on the date of 05/08/2021 at

22:06:46 Hours UTC.

15.     Snapchat did not provide an IP Address used during the upload of the contraband

video file but did provide an IP Address used to log into the suspect account six days prior to the

upload of the video.  The IP address of 172.100.85.95 was used on 05/02/2021 at 22:06:46 Hours

UTC to log into the suspect account.  The IP address was used by Charter Communications, also

known as Spectrum.  A subpoena was issued to Charter Communications for subscriber

information for the subscriber assigned to the IP address of 172.100.85.95 on 05/02/2021 at

22:06:46 Hours UTC.  On 06/14/2021 Charter Communications identified the subscriber as Luke

Park, with a residence of ███████████████ Augusta, Maine.

16.     TFO Bagley  viewed the video file titled as "*jonhall93-None-3a036137-6ac1-506f-991f-2ee8c4f972b0~36-5b3f2c25af.mp4*".  The video file is of an adult male having anal

sexual intercourse with a male child.  Both the adult and child are completely naked.  Room

settings such as bed sheets and pillow are shown in the video.  The video appears to have been

made by a camera held by the adult male pointing down towards the child to capture the sexual

act.  The adult male has the child's arms restrained behind the child's back while a pillow is

covering the child's head as he lay face down on the bed.  TFO Bagley  estimated the age of the

male child to be 10 to 12 years of age based on lack of body hair, muscle growth and overall

body growth, development and size in comparison to the adult male shown in the video.

17.     On 05/31/2021, NCMEC received CyberTip report #91796927 from Snapchat, as required by 18 U.S.C.A. § 2258A. In this case, Snapchat captured a user uploading 2 files of sexually explicit material. Snapchat reviewed the uploaded files. Snapchat reported the username on the suspect account was "jon_e5143". Snapchat reported that the suspect account had a phone number of (207)-213-3037, and a listed date of birth of ███ 1993.

18.     Snapchat reported that their staff had viewed the entire contents of both video files provided in CyberTip 91796927. TFO Bagley  viewed both videos and confirmed both were sexually explicit material of minors consisting of file names:

    a.    "jon_e5143-None-28cda07d-fdab-5067-b4f4-f624e7c525ee~39-25581b6598.mp4"

        i.    TFO Bagley  viewed video file "jon_e5143-None-28cda07d-fdab-5067-b4f4-f624e7c525ee~39- 25581b6598.mp4". The video file depicted two male children, approximately 10-12 years in age, exposing their genitals and performing oral sex on each other. TFO Bagley  estimate the age of the boys based on overall body structure and size as well as lack of pubic hair growth and development.

    b.    "jon_e5143-None-28cda07d-fdab-5067-b4f4-f624e7c525ee~39-74e99ed7cf.mp4".

        i.    TFO Bagley  viewed video file "jon_e5143-None-28cda07d-fdab-5067-b4f4-f624e7c525ee~39- 74e99ed7cf.mp4". The video file depicted a male child, naked on a bed, while an adult male engages in anal sexual

7

intercourse with the child.  TFO Bagley  estimate the age of the male child

as being 10-12 years in age due to overall size and development of the

body and genitals, as well as lack of pubic hair growth.  The size of the

child in comparison to the adult male is also relevant to the estimation of

age of the child.

19.     On 06/02/2022 TFO Bagley  presented Google, Snapchat and Instagram search warrants related to this investigation, consisting of the much of the same affidavit, to Justice Roberts at the Penobscot Judicial Center.  Justice Roberts reviewed the search warrants and images described in paragraph 34 and signed all three account search warrants.

20.     On 09/23/2021, Planning and Research Associate (PRA) Jared Pingree began an investigation into CyberTip # 91796927, learned, and relayed that Snapchat account username "jon_e5143", with phone number (207)-213-3037 and a listed date of birth of ███ 1993; had uploaded the two video files of a child being sexually exploited, described in paragraph 34, on the date of 05/27/2021.   Snapchat reported that the two video files were uploaded by the suspect account on 05/27/2021 at 12:01:43 Hours UTC and 12:01:31 Hours UTC.

21.     Snapchat did not provide an IP address for the upload of the video files but did provide an IP address for a login to the suspect account occurring on 05/13/2021 at 21:48:44 Hours UTC from an IP address of 2600:387:c:2c12::142, two weeks prior to the upload of the video files.  Upon researching the IP address of 2600:387:c:2c12::142 TFO Bagley learned that it was a cellular IP address belonging to AT&T Wireless.  TFO Bagley contacted AT&T who advised they do not retain any subscriber information in relation to cellular IP addresses.

22.     Snapchat did however provide a phone number for the suspect account which was (207)-213-3037.  PRA Pingree researched the phone number through an open-source phone number locator called ZetX.  ZetX is a free phone lookup provided to law enforcement.  The search provided the phone carrier as US Cellular.  On 09/27/2021 Assistant Attorney General Paul Rucha issued a subpoena to US Cellular for the subscriber records of the cellular phone account of (207)-213-3037.

23.     On 10/13/2021, US Cellular responded to the subpoena identifying the phone number of (207)-213-3037 as belonging to the account of Chandler Wierczorek of ████████ ████ Norridgewock, Maine.  Also on the phone account was an Austin Simmons and Heather Wierczorek.  Three other phone numbers were listed on the account including (207)-446-5108, (207)-557-1839 and (828)-220-1156, though only three persons names were provided.  A second address was listed on the account of ████████████ Randolph, Maine.  [As explained below, Chandler Wierczorek was a roommate of Hall in Norridgewock.]

24.     PRA Pingree researched the address of ████████████ Norridegwock, Maine using TLOxp, which is a commercially available, subscription-based database service offering access to law enforcement officers in the course of performing their duties.  PRA Pingree found several persons listed as residing at ████████████ in Norridgewock which included:

25.     Jon A. Hall, date of birth of ████/1993.  The name Jon Hall was similar to that of the suspect Snapchat account username of "jon_e5143", whose listed date of birth on the account was ████/1993; same first name, month and year.  Hall had a current address of ████████ ████ Morganton, NC, and several former addresses including ████████████

9

Norridgewock, ME.  Hall had numerous phone numbers associated with him including (910) 391-8077.

26.     PRA Pingree researched the Maine Sex Offender Registry and found that Jon Alan Hall, date of birth ███ /1993 was a lifetime registrant for convictions of Possession of Sexually Explicit Material of a Minor under 12 years old.

27.     PRA Pingree researched the Spillman database; a record keeping system used by Maine law enforcement.  A name file for Jon Hall, date of birth ███ 1993, listed Hall as residing at various residences in Chelsea, West Gardiner and at ████████ in Newport, consistent to Newport Police investigations.  Penobscot County Spillman, used by local municipalities and Sherriff Office departments had numerous involvements in 2021 with Hall listed as residing at ██████ in Newport.

28.     As TFO Bagley searched through the Spillman database TFO Bagley  observed Hall had numerous involvements in Penobscot, Sagadahoc, Kennebec and Somerset counties.  These involvements primarily included Hall having inappropriate and sexually focused contact with young boys within the age range of 12 to 14 years old.  Numerous police reports documented Hall associating with young boys, sexually abusing young boys and soliciting young boys for sexual acts and sexually explicit materials.  These reports ranged in time from 2019 through 2021.

29.     State Police Spillman listed several investigations against Hall of a sexual manner.

c. Incident 06Y004319 (2006), documents allegations made against Hall when he was 12-years old, forcing a 5-year-old boy to perform oral sex on Hall

d. Incident 14U332 (2014), Maine State Police Computer Crimes Unit investigated and charged Hall with Possession and Dissemination of Sexually Explicit Material of a Minor (under 12 years of age). The investigation revealed numerous past juvenile convictions for Unlawful Sexual Contact and Unlawful Sexual Touching.

e. Incident 20S054370 (2020), Maine State Police Major Crimes Unit investigated Hall for soliciting several boys for oral sex in exchange for money as well as sexually molesting them.

f. Incident 21S001241 (2021), Maine State Police Major Crimes Unit investigated Hall for sexually molesting a 15-year-old boy. In this investigation Det. Moore of the Major Crimes Unit learned that Hall had been contacting the victim through a Facebook account with a username of "Jon Evans", consistent to that of the Instagram CyberTip 99290888. In an interview with Hall reference this MCU investigation, separate from his involvement with Facebook, Hall admits to Detective Moore that Snapchat had banned his Snapchat account, showing a connection and suspension to Snapchat is consistent with Snapchat reporting two accounts suspected of belonging to Hall as reported in CyberTips 91796927 and 96574514.

11

30.     In the second Snapchat CyberTip report, on 07/27/2021, NCMEC received

CyberTip report #96574514 from Snapchat, as required by 18 U.S.C.A. § 2258A. In this case,

Snapchat captured a user as uploading 3 files of sexually explicit material. ESP Snapchat

reviewed all uploaded files.  Snapchat reported the username on the suspect account was

"jon_david330".  Snapchat reported that the suspect account had a phone number of (828)-659-

4295, and a listed date of birth of ████ /85.

31.     In CyberTip 96574514, Snapchat identified 3 videos of sexually explicit materials

of a minor which were uploaded by the suspect account on 07/26/2021 at 21:44:41 Hours UTC.

Snapchat staff reviewed the contents of all three videos prior to reporting to NCMEC.  TFO

Bagley  viewed all three videos and confirmed they were sexually explicit material of a minor.

32.     On 08/28/2021, NCMEC received CyberTip report #99290888 from Instagram, as

required by 18 U.S.C.A. § 2258A. In this case, Instagram captured a user as uploading 1 file of

sexually explicit material and one image Instagram identified as the profile picture of the suspect

account. ESP Instagram did not review the content of the file.  Instagram reported that the

account used the screen name "Jon Evans", the email address of fordfan111793@gmail.com , a

username of "jon.hall.1993" and a phone number of (207)-213-3037.  The email address of

fordfan111793@gmail.com is consistent with the email address found on evidence item #1.

33.     Instagram reported that user "Jon Evans" had uploaded and disseminated the

reported sexually explicit material to an Instagram user identified as username "Ian_dview" on

07/01/2021 at 04:35:13 Hours UTC.

34.     Instagram reported that their staff had not viewed the one reported video file but found that it had a hash match of a previously confirmed video file of sexually explicit material of a minor.  Instagram categorized the video file as A1, which is categorization of a prepubescent minor engaged in a sexual act.

35.     On 02/15/2022 TFO Bagley presented a search warrant to Justice Stokes at the Kennebec Judicial Center to view the video file and profile picture provided in CyberTip 99290888.  Justice Stokes reviewed and signed the warrant authorizing me to view the video file. TFO Bagley viewed the video file provided in CyberTip 99290888 and titled as "Pp4dBCi66rLFhuve211199298_244745450433107_568270821990973733_n.mp4" and confirmed it was sexually explicit material of a minor.  TFO Bagley also viewed the profile picture and found that it was that of a cemetery, with no identifiable feature.

36.     On 01/10/2022, TFO Bagley contacted the Maine Sex Offender Registry representative Kathy Holt.  Holt researched Jon Hall in the sex offender registry database and advised that Hall had left Maine and moved to North Carolina, where he registered with the North Carolina Sex Offender Registry on 12/07/2021 and sent notice to Maine Sex Offender registry on 12/13/2021.  Hall had registered his address with the North Carolina Sex Offender Registry as ▮▮▮▮▮▮▮▮▮▮ Morganton, North Carolina 28655.  Hall provided a phone number of 910-391-8077 as his personal phone number on his North Carolina sex offender registration.  In running Hall's information through Spillman TFO Bagley found that the North Carolina Sex Offender Registry had an email address for Hall on his Sex Offender Registry name file of fordfan111793@gmail.com, consistent to that provided in Instagram CyberTip 99290888, evidence item #1 and that of Hall's TLOxp name file.

13

<u>North Carolina Sex Offender Registry:</u>

37.     On 05/06/2022 TFO Bagley spoke with Lt. Shelly Hartley of the Caldwell County

Sherriff's Office in North Carolina.  Lt. Hartley advised that she had received an informational

tip from the United States Marshall Service, Marshall Joe Cowan, concerning a sex offender

residing in Caldwell County and not registering as a sex offender.  Marshall Cowan reported

having received information from the Maine State Police Computer Crimes Unit concerning

suspect Jon Hall, who was the main suspect in NCMEC CyberTip 96574514.  Marshall Cowan

found Hall's employer at Porta Jon Service who confirmed Hall's employment.  Marshall Cowan

did not make contact with Hall and thus reported Hall's failure to register to the local sex

offender registry which is the Caldwell County Sherriff's Office, which Lt. Hartley supervises.

38.     Lt. Hartley investigated Hall's Failure to Register and ultimately obtained an

arrest warrant for Hall for Failure to Register as a Sex Offender.  On 12/06/2021, Jon Hall was

arrested by the McDowell County Sherriff's Office, as reported in McDowell Sherriff's Incident

Report 2021-03482.  The following day, 12/07/2021, Hall registered as a sex offender with the

Caldwell County Sherriff's Office, listing ██████████████████████ Lenoir,

North Carolina 28645.  Upon registering with Lt. Hartley, Hall reported to her that he had friends

in Burke County; which he later registered in.

39.     Jon Hall registered as a sex offender with the North Carolina Sex Offender

Registry in Caldwell County and then soon re-registered in Burke County with the Burke County

Sherriff's Office.  TFO Bagley spoke with Robin Jennings of the Burke County Sherriff's Office

who oversees the sex offender registry for Burke County.  Jennings reported that Jon Hall listed

a residential address of ██████████████ in Morganton, North Carolina and reported a

phone number of <u>910-391-8077</u> as being his contact phone number.  TFO Bagley further found

that in reviewing Hall's active sex offender registry information, that he had listed the Google

Gmail account of <u>fordfan111793@gmail.com</u> as being his account to contact.

North Carolina ICAC CyberTip 110495549:

40.     TFO Bagley spoke with Detective Penny Smith and Det. Lowdermilk of the

Burke County Sherriff's Office.  Detectives stated that their agency was assigned a NCMEC

CyberTip of 110495549 from ESP Instagram.

    g.   The North Carolina ICAC office was assigned CyberTip 110495549 on

        01/12/2022.  The CyberTip was then assigned to Det. Lowdermilk.  In reviewing

        the CyberTip, Instagram reported to NCMEC on 12/12/2021 that a user with

        USER ID 48667462858 had uploaded one video file of sexually explicit material

        of a minor.  Instagram also provided the profile picture to the suspect account.

        Neither the video nor image file were reported to have been viewed by Instagram

        staff prior to reporting to NCMEC.

    h.   Instagram reported that the user's account information as follows:

        i.   Name: Zachary Hall

        ii.   Phone: <u>1-(910)-391-8077</u>

        iii.   Email Address: jonevans028@gmail.com

        iv.   Screen/User Name: zackaryhall1993

        v.   ESP User ID: 48667462858

41.     The phone number, (910)-391-8077, is consistent with that identified as belonging to Jon Hall and provided by Hall to the North Carolina Sex Offender Registry.  The email address of jonevans028@gmail.com is consistent with the username of "Jon Evans" as reported by Instagram in CyberTip 99290888.

42.     In my experience investigating cyber-crime, I have learned that devices that are actively signed into a Google account give access to Google to monitor activity by the device itself.  Image and video files uploaded, location data, internet search history and message content are a few examples of data monitored and saved by Google when synced with a device.

43.     On June 2, 2022, TFO Bagley presented search warrants for the Google, Instagram and Snapchat accounts mentioned in this affidavit to Judge Roberts, who reviewed and signed the warrants for Google, Snapchat and Instagram.  TFO Bagley submitted the signed search warrants to Google, Snapchat and Instagram and received account records from Snapchat and Instagram.

44.     Google responded on June 13, 2022 that the signed search warrant required Google to make subjective or relevance determinations.  After referring to Assistant Attorney General Paul Rucha regarding the issue reported by Google, TFO Bagley removed language in the initial Google search warrant and presented a revised Google search warrant to Judge Michael Roberts on 06/14/2022.  Judge Roberts signed the search warrant and a copy of the revised signed warrant was submitted to Google on 06/15/2022.

45.     Google responded with a large amount of account records for all four Google accounts requested.  Computer Forensic Analyst Victoria Brennan was assigned the Google

account records to examine and process through Axiom, a computer forensic software allowing

for easier navigation and parsing of high volume digital records.

46.     As CFA Brennan processed the Google records she identified the Google account

of fordfan111793@gmail.com as containing evidence relevant to this investigation into Jon Hall.

Part of that evidence found on the account records of fordfan111793@gmail.com was a

substantial amount of sexually explicit material of male children.

47.     On 08/25/2022 TFO Bagley was contacted by Maine State Police Corporal Chris

Rogers.  Cpl. Rogers advised that Nancy Prince, owner of the Four Corners Store in Gardiner

had reported to Cpl. Rogers that a man named Jon Hall was living in a house across the street

from the store.  Prince reported to Cpl. Rogers that Hall was a known offender on the Sex

Offender Registry and that he was living in the residence with several children.  Prince stated

Hall had come into the store on 08/25/2022 and made her feel uncomfortable.  Prince directed

Cpl. Rogers to Hall's residence located across the street from the store.  Cpl. Rogers identified

the residence as being ██████████████ in West Gardiner.

48.     Cpl. Rogers called the Gardiner Town Office and spoke with Town Clerk Angela

Phillis.  Phillis confirmed that Hall had been into the Town Office on 08/25/2022 with a female

identified as Megan Thurlow.  Thurlow was registering a vehicle, ME PC 229-ATB, a silver

2015 Chevrolet Tahoe with a registered address of ████████████ West Gardner, Maine.

Town Clerk Phillis knew Hall and knew him to be a sex offender.  Phillis spoke with Hall to

ascertain if he was going to register in Maine.  Hall told Phillis that he was moving back to

Maine.

49.     On 08/26/2022, TFO Bagley along with Agents from Homeland Security Investigations (HSI) were conducting surveillance on suspect Jon Hall, pursuant to a separate investigation into child pornography investigated by the Maine State Police Computer Crimes Unit and Homeland Security.  The investigation into child pornography is documented in Maine State Police incident 21S030589.  Pursuant to 21S030589 TFO Bagley had obtained a search warrant for the residence of ███████████ in West Gardiner along with the person of Jon Hall.  The search warrant, signed by Justice Brent Davis on 08/26/2022, allowed for the search of Jon Hall's person, wherever he may be located in the State of Maine as well as the residence of ███████████.

50.     On 08/29/2022 TFO Bagley along with Special Agent Laurie Northrup conducted surveillance on the residence of ███████████ in West Gardiner.  As we set up surveillance on the residence, TFO Bagley observed several people exit the residence and enter a Chevrolet Tahoe, TFO Bagley did not see the operator.

51.     TFO Bagley watched as the Tahoe, ME BC 229-ATB, backed out of the driveway and onto Townhouse Road.  The vehicle crossed the intersection and entered Sears Corner Road. TFO Bagley knew that Kennebec County Sherriff's Deputy Phil Lynch was parked down the road.  TFO Bagley called Deputy Lynch and advised him that the vehicle had left and there was an unknown driver.  TFO Bagley asked Deputy Lynch to find an independent violation to stop the vehicle in hopes of identifying who the driver was without compromising our primary surveillance mission.

52.     While speaking with Deputy Lynch over the phone he advised that he could see the suspect vehicle and that it did not have a front license plate, as required by Maine Law in

Title 29-A Section 452. Deputy Lynch followed the vehicle as it turned left onto Lewiston Road. Deputy Lynch initiated a traffic stop on Lewiston Road. Special Agent Northrup and TFO Bagley arrived soon after.

53.     Upon TFO Bagley's arrival to the traffic stop Deputy Lynch was already walking back from the suspect vehicle with several license cards in his hand. Deputy Lynch advised that Jon Hall was the operator of the vehicle. Special Agent Northrup and TFO Bagley immediately went to the driver seat of the vehicle. TFO Bagley recognized the driver of the vehicle as being Jon Hall from his driver's license photo along with social media photos. Hall was actively talking on an Apple iPhone that he was holding. TFO Bagley could see on the screen of the phone that it read "Mom". Hall told TFO Bagley that he was speaking to his mother.

54.     TFO Bagley seized and placed Hall's cellphone into airplane mode. TFO Bagley secured the phone in his cruiser and placed it into a Faraday bag. Hall's Apple iPhone was placed into evidence and titled as evidence item 2.

55.     TFO Bagley reapproached Hall and his occupants and first spoke with the female in the vehicle, identified as Megan Thurlow. Thurlow stated that Hall had been staying with her at her residence for the last couple days. Thurlow stated that she only saw him with the Apple iPhone that he had in his possession. Thurlow stated that Hall had been sleeping in her living room while staying at her residence.

56.     Hall stated that the only device he brought with him back to Maine from North Carolina was his Apple iPhone. Hall denied having any old phones or any Android phones. Hall

stated that he was actually preparing to trade in his current iPhone and purchase a new Apple

iPhone 13 ProMax.

57.     Hall asked if he was free to leave because he had to transport Megan to work.  At

this time TFO Bagley placed Hall under arrest for Violation of Conditions of Release for not

providing a correct address on his bail conditions.  Hall argued the decision to arrest.  Hall also

refused to answer any questions without speaking to an attorney.

58.     Kennebec County Deputy Sherriff York arrived on scene.  TFO Bagley

transferred custody of Hall to Deputy York who transported Hall to the Kennebec County Jail

where he was booked and charged with Class E Violation of Conditions of Release.

59.     TFO Bagley along with several other Special Agents returned to ███████

███ in West Gardiner with homeowner Megan Thurlow to execute the residence portion of the

search warrant.  Thurlow guided us inside to the Livingroom where she pointed out a recliner

which she identified as the place Hall had been sleeping while staying in her house.  TFO Bagley

observed an Apple iPhone charger inside the recliner cushion along with a green suitcase next to

the recliner.  TFO Bagley opened up the suitcase and found several pairs of male's pants and

underwear.  The pants were all the same size, 42x32, and were of a large size consistent to that of

Jon Hall.  The other male, Keith Brasslett, was very small and only weighed 130 pounds.

Brasslett and Thurlow both were shown the green suitcase, both denied ownership of the

suitcase.  A further search of the suitcase revealed a Motorola cellphone placed in the front

pocket.  Both Thurlow and Brasslett denied ownership or knowledge of the phone.

60.     TFO Bagley photographed the residence, the living room recliner, the suitcase, the clothing in the suitcase and the cellphone found in the suitcase.  TFO Bagley seized the Motorola cellphone and placed it into evidence, where it was titled as evidence item 3.  TFO Bagley provided Megan Thurlow with a copy of the search warrant and inventory.

61.     Special Agent Mathieu and TFO Bagley responded to the Kennebec County Jail where we met with Jon Hall in booking.  TFO Bagley issued Hall a copy of the search warrant and inventory form.  TFO Bagley did not ask Hall any questions but did explain what we had taken from the residence.  Hall identified the suitcase as belonging to him and that all he had in it was his clothing.  When Hall was told of the Motorola cellphone located in the suitcase, he denied knowing the phone was in there and stated that his roommate, Austin Simmons, had packed his bag and must have put it in there.

62.     Special Agent Mathieu and TFO Bagley cleared the jail at this time.  TFO Bagley transferred custody of the two phones, identified as evidence item numbers 2 and 3, to Special Agent Mathieu.  Special Agent Mathieu transferred custody of the phones to Special Agent Kelley who began a forensic examination on the two devices.

63.     With Hall arrested and confined at Kennebec County Jail, TFO Bagley submitted his Probable Cause report to the Kennebec Jail intake later in the day of 08/29/2022. Jail staff confirmed receipt of the report.  On 09/01/2022 TFO Bagley was advised that Kennebec Jail staff had released Hall from the facility.  TFO Bagley spoke with Jail staff and was advised that they had forgot to send my Probable Cause report to a Judge within 48 hours of Hall being admitted into the jail.  Since Hall's Probable Cause was not reviewed within 48 hours by a Judge, Jail staff released him from custody without charge and without any pending court date.

21

64.     On 09/02/2022 TFO Bagley met with Homeland Security Special Agent Greg Kelley. SA Kelley confirmed that Hall's Apple iPhone, referred to as evidence item 2, was still in the process of being examined using forensic tools. SA Kelley confirmed that the examination of Hall's iPhone had produced over 150 image and video files of sexually explicit material of pubescent and pre-pubescent aged children. The images and videos of sexually explicit material depicted children engaged in sexual acts with themselves, other children and other adults. Some of which were found to be sent to other users online by Hall's accounts and device.

65.     SA Mathieu viewed chat conversations found on evidence item 2 through forensic examination of the device. Hall and Peterson communicated using iMessage's and the Telegram application. The iMessage communication between Hall and Peterson begins on October 21, 2021. In viewing the chat conversations, SA Mathieu found Hall's account was communicating with a person identified as Michael Peterson. The cell phone number associated with Peterson's telegram account is 207-376-5828 with username paradoxical_osprey.

66.     Through the investigation, HSI Intelligence Research Specialist Kimberly Perry identified a Michael Robert Peterson, date of birth ███ 1984, phone number 207-376-5829 matching the description of Peterson in photos and phone information. Peterson is a registered sex offender with the state of Maine residing at ████████████ in Westbrook Maine. PETERSON returns with an active CashApp account under name Michael Peterson and username $ScorpioQweer via phone number query. Additional forensic evidence indicates the presence of a second CashApp account under name Michael Peterson and username $MikiePeeps.

22

67.    SA Mathieu viewed chat conversations found on evidence item 2 from the ESP of Telegram.  In viewing the chat conversations between Hall and Peterson, one particular conversation detailed a plan for them to drive to Eustis, Maine to have sex with a 15-year-old male child together; the male child was known to Hall.  In this conversation Hall also makes comments admitting to having deleted his Apple iCloud account and suggesting to Peterson to delete his.

68.    SA Mathieu viewed another conversation between Hall and Peterson on August 20, 2022 regarding the sale/purchase of child sexual abuse material (CSAM) from a 13-year-old. Hall sends Peterson four images in the telegram application depicting what Hall says is a 13-year-old boy. The first image depicts the buttocks of the 13-year-old boy. The following three images are clothed images of the boy's face and buttocks.  Peterson asks if Hall has any photos of the child's front side. Hall advises Peterson he is trying, but he does not have money and it costs $5 per photo. Peterson responds to Hall and says he will send Hall $10 if Hall thinks the child will show his "front." SA Mathieu searched the cashapp application and discovered that an individual with the screen name Michael Peterson, user name $MikiePeeps, and a selfie photo matching the description of Peterson sent $10 to Hall via Cash App on the date of the conversation. Hall sends Peterson three images and two videos of child pornography. Hall identifies the child as a 14-year-old boy. Six examples of contraband files are attached to this affidavit.

A. Exhibit 1 depicts a color imaged of a pubescent male child's erect penis identified by Hall as 14-year-old boy. The focus of the image is the child's erect penis.

23

B. Exhibit two depicts a color imaged of a pubescent male child's erect penis identified by Hall as 14- year-old boy. The focus of the image is the child's erect penis. The image appears to be the same image as exhibit one.

C. Exhibit three depicts a color image of a pubescent male child's erect penis identified by Hall as 14- year-old boy. The focus of the image is the child's erect penis.

D. Exhibit four depicts a screen capture of a color video :16 seconds in length of a pubescent male child lying on what appears to be a bed masturbating and ejaculating on his stomach. Hall identifies the child as a 14-year-old boy.

E. Exhibit five depicts a screen capture of a color video :06 seconds in length of a pubescent male child lying on what appears to be a bed masturbating. Hall identifies the child as a 14-year-old boy.

69.     SA Mathieu discovered iMessage conversations between Hall and a contact saved as "Mike Peterson" with the phone number 207-376-5828 discussing the sexual abuse of children. On June 2, 2022, Hall advised Peterson he has a 15-year-old that wants him to take his virginity. Hall advises Peterson he will record it for him. Peterson replies, "oh that's fun."

70.     On August 24, 2022, Hall and Peterson have another conversation via telegram and Peterson asks Hall what his age preference is of children. Hall says 13+. Peterson asks for a reason and asks if they are fuckable because Peterson would go 10 years +. Hall responds and says it is because that age is more willing.

24

71.     On September 11, 2022, Special Agent Northrup and TFO Bagley arrested Jon

Hall on active state warrants in Auburn.  TFO Bagley seized an Apple iPhone 13 belonging to

Hall at the scene and marked it has evidence item 4.

72.     On September 15, 2022 U.S. Magistrate Justice Nivison signed a search warrant

for the device of evidence item 4.

73.     In reviewing messages found on evidence item 4, SA Mathieu observed iMessage

conversations between Hall and a contact identified as "Mike Peterson" with phone number 207-

376-5828. On September 3, 2022, Hall sends Peterson an image of a minor male child's erect

penis. Hall states to Peterson that the child is 16-17 years old. The color image is titled,

"67502655469_48B59A78-617a-4BD6-ABB2-644E13C0E9A2_Original" (exhibit 6) depicts a

16 to 17-year-old pubescent child standing holding his erect penis that is showing through the

hole in his underwear. The focus of the image is the child's erect penis.

74.     On September 11, 2022, Peterson sends Hall an iMessage and advises him he sent

Hall $20 and says he must not have had any luck. Hall advises Peterson he has had luck, but the

13-year-old child will not let him save the images/videos yet. Peterson says he is jealous and he

has not had any luck on the Kik application. Peterson asks Hall if the child is "cut or uncut" and

says he wishes he could see. Peterson says since Hall is not using Telegram, he is "jonesin."

75.     On November 18, 2022 SA Mathieu served a summons (HSI-BH-2022-040383)

on Verizon Wireless requesting subscriber and payment information and phone data for the

phone number 207-376-5828 associated with Michael Peterson. On December 4, 2022 Verizon

responded stating the phone number is active and is ported to tracfone effective August 6, 2020.

Verizon provided the device id information for 207-376-5828 as a Apple iPhone X, silver 64 GB Verizon. The associated IMSI is 311480569089553.

76.     On December 5, 2022 SA Mathieu served a summons (HSI-BH-2022-044331) to Tracfone requesting subscriber information and phone data for the phone number 207-376-5828. Tracfone responded on December 22, 2022 providing the subscriber name as Michael Peterson with the date of birth as ████ 1984 residing in Westbrook, Maine. The associated subscriber account id is **paradoxical_scorpio@icloud.com** and associated email of **mikie.peterson207@gmail.com.** The activation date of the port to tracfone is August 5, 2020. The service end date with Tracfone is January 18, 2023.

77.     On December 22, 2022 SA Mathieu sent Apple a preservation request for the TARGET Apple iCloud accounts and associated identifier of **paradoxical_scorpio@icloud.com** and **mikie.peterson207@gmail.com**. Apple provided a confirmation number of 202200125679 to confirm receipt of the preservation request.

## BACKGROUND CONCERNING APPLE[2]

78.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

---

[2]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at

79.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.      Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.      iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.      iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data.  iWork Apps, a suite of productivity apps (Pages,

---

https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

        d.     Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

        e.     Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

        f.     Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

        g.     App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

      80.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The

Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

81.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

82.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service,

including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

83.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

84.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service

("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

85.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

86.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

87.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant

31

time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

88.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

89.     Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators such as Facebook, Instagram, Telegram, and KIK. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

90.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

91.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the account described in Attachment A to seek the items described in Attachment B. That Michael Peterson is the subject of a child exploitation investigation regarding the receipt and possession of child pornography. The information was discovered pursuant to search warrants conducted on Jon Hall's cellphones, which were found to contain evidence of the commission of the following crime: 18 U.S.C. §§ 22252A(a), 2422, and 2252(a) and (e), which prohibit a person from knowingly transporting, receiving, distributing, possessing or accessing with intent to view, child pornography, as defined in 18 U.S.C. Section 2256(8), form using facilities of interstate communication to entice a child to engage in illegal sexual acts, and attempting or conspiring to sexually exploit children by producing child pornography.

92.     That child pornography found on evidence item 2 contained over 150 image and video files of sexually explicit material of pubescent and pre-pubescent aged children. The images and videos of sexually explicit material depicted children engaged in sexual acts with themselves, other children and other adults.  Some of files were sent to Peterson through the telegram application and the iMessage application.

93.     That in review of chat conversations found on evidence item 2, Hall's account was found to be conversing with known sex offender, Michael Peterson.  One particular conversation between Hall and a known Maine sex offender listed out a plan for them to drive to Eustis, Maine to have sex with a 15-year-old male child together.

94.     That in review of a chat conversation found on evidence item 2 and evidence item 4, Peterson pays Hall to attempt to buy and receive produced child pornography and Peterson sends Hall money for the purchase of child pornography. Due to Peterson's role in the payment of child pornography, he conspires with Hall to produce child pornography.

95.     That based on my training and experience in Apple iMessages, Hall and Peterson communicate through iMessage indicated by the blue message bubbles exchanged between them from October 21, 2021 through September 11, 2022. These blue iMessage communications indicate that Peterson uses an Apple device to communicate with Hall.

96.     That based on my training and experience in Apple iCloud systems, I know that mobile devices such as Apple iPhones are often connected to remote storage platforms such as that known as iCloud.  These remote storage platforms allow a user to access content using multiple devices using the same operating system and personal account, such as an Apple ID.

97.     That in reviewing cellular records through this investigation I observed Peterson's phone account utilizes an Apple device to utilize cellular data.  Peterson also utilizes an Apple iCloud account identified as **paradoxical_scorpio@icloud.com** and associated email account of **mikie.peterson207@gmail.com.**

98.     That based on Peterson's criminal history of gross sexual assault of a minor under the age of 14, and the evidence discovered on evidence items 2 and 4 of possessing, receiving and conspiring to produce sexually explicit material of children, I believe Michael Peterson's Apple iCloud account, identified as **paradoxical_scorpio@icloud.com** and **mikie.peterson207@gmail.com**, likely possesses evidence of sexually explicit material of

34

children and evidence of other suspects engaged in the solicitation, dissemination of sexually explicit material of children.

99.     Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B, are located at the locations described in Attachment A.  I respectfully request that this Court issue a search warrant for the locations described in Attachment A, authorizing the seizure and search of the items described in Attachment B.

100.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Apple.  Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Abby Mathieu
Special Agent
Homeland Security Investigations

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date:  **Jan 27 2023**

City and state:  Bangor, ME

_____
Judge's signature
John C Nivison U.S. Magistrate Judge
Printed name and title

35